SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Arthur F. Wildgoose (A-61/80-24) (089853)**

**Argued February 3, 2026 -- Decided July 14, 2026**

**JUSTICE PIERRE-LOUIS, writing for a unanimous Court.**

In this appeal, the Court considers whether the Appellate Division properly reversed the denial of defendant Arthur Wildgoose's petition for post-conviction relief (PCR), despite agreeing with the PCR court that defendant could have but did not raise his claims on direct appeal, based on its finding that the exception to the procedural bar set forth in Rule 3:22-4(a)(2) applied because enforcement of the bar would result in a fundamental injustice.

In 2016, a grand jury indicted defendant on one count of aggravated sexual assault and one count of endangering the welfare of a child for the sexual assault of 12-year-old B.P. Post-indictment, the State offered defendant a plea deal, which he rejected. Defendant was convicted of both charges at trial. For the sexual assault charge, the trial court sentenced defendant to 30 years in prison and noted that the Jessica Lunsford Act (JLA) requires a minimum of 25 years without parole. Defendant's sentence for the endangerment charge was to run concurrently.

Defendant appealed, arguing errors with respect to the indictment and jury instructions, as well as prosecutorial misconduct and an excessive sentence. The Appellate Division affirmed, and the Court denied certification.

Defendant then filed a PCR petition. In his petition, defendant challenged the Attorney General's Plea Negotiation Guidelines issued pursuant to the JLA. Specifically, defendant objected to the Guidelines' graduated plea provision, which prohibits prosecutors from tendering the most lenient plea allowed by the JLA -- a 15-year term of parole ineligibility -- once a defendant is indicted.

The PCR court rejected defendant's arguments that the graduated plea provision is fundamentally unfair and violates due process. The court noted that defendant was never entitled to a plea offer at any specific stage of his prosecution. The PCR court further held that defendant was procedurally barred from challenging his sentence under Rule 3:22-4(a), finding that his arguments could have been raised at an earlier proceeding.

1

Defendant appealed, arguing that he could not have asserted his claims in a prior proceeding and that they were therefore excepted from the procedural bar under Rule 3:22-4(a)(1). The Appellate Division agreed with the PCR court that defendant's claims could have been raised on direct appeal and that defendant therefore failed to establish the exception in Rule 3:22-4(a)(1). 479 N.J. Super. 331, 345 (App. Div. 2024). But the appellate court found that the exception set forth in Rule 3:22-4(a)(2) -- "enforcement of the bar . . . would result in fundamental injustice" -- should preclude application of the procedural bar in this case. Id. at 345, 347. The Appellate Division remanded the case to the PCR court to develop the factual record by requiring the prosecutor to provide an explanation for his decision to withhold a pre-indictment plea offer. Id. at 358. It also created a prophylactic rule requiring prosecutors to create statements of reasons in such cases, with instructions about what the statements must include. Id. at 357-58.

The Court granted defendant's petition for certification, 260 N.J. 473 (2025), and the State filed a notice of cross-appeal.

**HELD:** Defendant's claims are procedurally barred, no exception applies, and the Appellate Division should not have created a new procedural rule in this procedurally barred appeal.

1. PCR is New Jersey's analogue to the federal writ of habeas corpus. It is neither a substitute for direct appeal nor an opportunity to relitigate cases already decided on the merits. As a result, petitioners are procedurally barred from asserting "[a]ny ground for relief not raised in the proceedings resulting in the conviction . . . or in any appeal taken in any such proceedings" unless (1) it "could not reasonably have been raised in any prior proceeding;" (2) "enforcement of the bar . . . would result in fundamental injustice; or" (3) "denial of relief would be contrary to a new rule of constitutional law." R. 3:22-4(a). The purpose of Rule 3:22-4 is to help cases reach finality, and without procedural rules requiring the consolidation of issues, litigation would continue indefinitely in a disconnected and piecemeal fashion. Regarding the exception in Rule 3:22-4(a)(2), fundamental injustice, there is no bright-line test to determine when the exception applies. But the Court has stressed that it should be applied only in exceptional circumstances. To determine whether a fundamental injustice has occurred, courts look to whether the judicial system has provided the defendant with fair proceedings leading to a just outcome. Although the petitioner does not have to prove that the issue of concern cost him the case, he must make some showing that an error or violation played a role in the determination of guilt. When a PCR claim is time barred or procedurally barred, an abbreviated reference to underlying meritorious issues may be useful in demonstrating that reliance on the procedural bar has caused no injustice. (pp. 15-19)

2

2.  Here, as both the PCR court and the Appellate Division found, defendant and defense counsel were well aware of the existence of the Guidelines at the time of the direct appeal.  479 N.J. Super. at 345.  Defendant was also aware that the State did not offer him a plea prior to indictment or provide him with pre-indictment discovery.  Consequently, the Court agrees with the prior courts that the exception in Rule 3:22-4(a)(1) is not applicable.  See ibid.  Neither is the Rule 3:22-4(a)(3) exception:  no new rule of constitutional law is implicated in this case.  (pp. 19-20)

3.  Defendant never argued that his claims were exempt from the procedural bar under Rule 3:22-4(a)(2) and instead only argued exemption under Rule 3:22-4(a)(1).  Defendant's arguments amount to general challenges to the Guidelines with no facts in the record showing that his case resulted in a fundamental injustice, and they have no bearing on the determination of his guilt because defendant rejected the plea he was offered and went to trial.  The Appellate Division appeared to base its determination of a potential fundamental injustice on multiple levels of speculation, as opposed to an actual showing by defendant that a fundamental injustice exempted his claims from the procedural bar in Rule 3:22-4(a).  See 479 N.J. Super. at 347.  Such speculation cannot form the basis for a determination that the procedural bar in Rule 3:22-4(a), put in place to ensure finality in cases, should be relaxed.  Moreover, the State is not required to offer a defendant a plea at any time, at all.  If a defendant is not entitled to a plea offer and the State acts well within its discretion in deciding not to offer a plea, it is difficult to imagine a scenario, in the PCR setting, in which the State's decision not to offer a plea would result in a fundamental injustice for purposes of circumventing the procedural bar in Rule 3:22-4(a).  No fundamental injustice occurred in this case.  (pp. 20-23)

4.  Here the plea the State offered -- 25 years' imprisonment with 18 years of parole ineligibility -- did not comply with the No Early Release Act, which would require just over 21 years of parole ineligibility.  Defendant did not accept that plea, so he has suffered no harm or injustice from the plea offer.  The Court asks the Attorney General and county prosecutors to ensure that pleas offered comport with all relevant statutes and accurately state the applicable terms of imprisonment and parole ineligibility the defendant faces under the law.  Similarly, the Attorney General should monitor and address whether any inter-county disparity exists in the following and implementation of the Guidelines.  (p. 21 n.5)

**REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion. JUSTICE HOFFMAN did not participate.**

3

SUPREME COURT OF NEW JERSEY
A-61/80 September Term 2024
089853

State of New Jersey,

Plaintiff-Respondent/Cross-Appellant,

v.

Arthur F. Wildgoose,
a/k/a Arthur Wildgoose,

Defendant-Appellant/Cross-Respondent.

On certification to and appeal from the Superior
Court, Appellate Division, whose opinion is reported
at 479 N.J. Super. 331 (App. Div. 2024).

| Argued | Decided |
|--------|---------|
| February 3, 2026 | July 14, 2026 |

James H. Maynard argued the cause for appellant/cross-respondent (Maynard Law Office, attorneys; James H. Maynard, on the briefs).

Amanda G. Schwartz, Deputy Attorney General, argued the cause for respondent/cross-appellant (Jennifer Davenport, Acting Attorney General, attorney; Michael L. Zuckerman, Deputy Solicitor General, Tim Sheehan, Assistant Attorney General, and Jennifer E. Kmieciak, and Amanda G. Schwartz, Deputy Attorneys General, of counsel and on the briefs).

Nadine Kronis, Assistant Deputy Public Defender, argued the cause for amicus curiae Public Defender of New

Jersey (Jennifer N. Sellitti, Public Defender, attorney; Nadine Kronis, of counsel and on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

This appeal, which involves a denial of post-conviction relief (PCR), has a complex procedural history.[1]  As relevant to the appeal before us, the PCR court found that defendant Arthur Wildgoose's claims were procedurally barred because he could have, but failed to, raise the issues on direct appeal. The Appellate Division agreed that defendant could have raised his claims on direct appeal, but reversed, finding that the exception in Rule 3:22-4(a)(2) applied because enforcement of the procedural bar would result in a fundamental injustice.  Thereafter, the Appellate Division considered the appeal on the merits, including a claim defendant raised for the first time while the appeal was pending.

---

[1]  Notably, following the Appellate Division's decision in State v. Wildgoose, 479 N.J. Super. 331 (App. Div. 2024), defendant's case began to proceed on two parallel tracks:  (1) in the PCR court on remand from the Appellate Division to explore further the circumstances underlying the plea offer, and (2) in this Court, with respect to defendant's petition for certification.  The issues before us are distinct from the issues of focus in the first track, but our holding here necessarily moots the parallel litigation, which has presently reached the Appellate Division and has been stayed by that court pending our decision in this matter.  For simplicity, we minimize discussion of the parallel proceedings here.

2

For the reasons that follow, we reverse the Appellate Division's judgment and hold that defendant's claims are procedurally barred, no exception applies, and the Appellate Division should not have created a new procedural rule in this procedurally barred appeal.

I.

This appeal arises from defendant's conviction for the sexual assault of 12-year-old B.P.

B.P.'s mother, C.P., met defendant in December 2014, when C.P. and defendant were fourth-grade basketball coaches. At the time, defendant was 31 years old. C.P. started interacting with defendant regularly, and by March 2015, defendant was visiting C.P.'s house a few times a week to spend time with C.P. and her children. Defendant began sleeping over at C.P.'s house, both with and without his own children present. Although C.P. testified that she developed a romantic interest in defendant, she stated that she and defendant never had a romantic or intimate sexual relationship.

Unbeknownst to C.P., defendant had initiated a relationship with her 12-year-old daughter, B.P. By October 2015, defendant asked B.P. to be his girlfriend and B.P. said yes. B.P. testified that she and defendant said "I love you" to each other and sent each other sexual text messages. Defendant told B.P. not to tell her mother about their relationship.

3

On November 13, 2015, defendant and his children slept over at C.P.'s house. They slept in the basement along with B.P. and B.P.'s younger sister. In the middle of the night, B.P. woke up to defendant pulling her off of the air mattress where she was sleeping and onto the futon pull-out bed where he was lying. B.P. testified that defendant started kissing her, pulled her pants down, and grabbed her hand and put it on his penis. According to B.P., defendant then rolled B.P. onto her side, and with her back to him, penetrated her vagina with his penis. The next day, defendant gave B.P. an emergency contraceptive pill.

Later in November 2015, after B.P. continuously asked if defendant could sleep over on a particular night and C.P found a text message on B.P.'s phone from defendant telling her to "[d]elete everything," C.P. called the police and reported that she thought there was an improper relationship between defendant and B.P. On December 28, 2015, B.P. told her mother that defendant had sexually penetrated her, specifically that he "took her virginity," on November 13, 2015. Thereafter, B.P. gave a statement to the police regarding her sexual relationship with defendant. In the ensuing investigation, the State obtained the text messages sent between B.P. and defendant where defendant asked B.P. if she wanted to be his girlfriend and have sex, and they discussed having a baby together.

In 2016, a Somerset County grand jury indicted defendant on one count of aggravated sexual assault and one count of endangering the welfare of a child. Post-indictment, the State offered defendant a plea deal of 25 years' imprisonment, with 18 years of parole ineligibility. Defendant rejected that plea offer.

Defendant was convicted of both charges at trial. For the sexual assault charge, defendant was sentenced under the Jessica Lunsford Act (JLA), N.J.S.A. 2C:14-2(a)(1), because he committed aggravated sexual assault against a child younger than 13 years of age. The trial court sentenced defendant to 30 years in prison and noted that the JLA requires a minimum of 25 years without parole. Defendant was also sentenced to five years for the endangerment charge, to run concurrently with his sexual assault sentence.

Defendant appealed, raising the trial court's failure to amend the indictment and to instruct the jury on a lesser-included offense, as well as a claim of prosecutorial misconduct. Defendant also argued that his sentence was excessive. The Appellate Division affirmed. This Court subsequently denied defendant's petition for certification.

Defendant then filed a PCR petition. In his petition, defendant challenged the Attorney General guidelines issued pursuant to the JLA (Guidelines). See Off. of the Att'y Gen., Uniform Plea Negotiation Guidelines

5

to Implement the Jessica Lunsford Act, P.L. 2014, c. 7 (2014), https://dspace. njstatelib.org/server/api/core/bitstreams/b9151c2e-0750-4e8f-a409-b26a0e71f1a0/content. Specifically, defendant objected to the Guidelines' graduated plea provision, which prohibits prosecutors from tendering the most lenient plea allowed by the JLA -- a 15-year term of parole ineligibility -- once a defendant is indicted. Id. at 3. The Guidelines provide that plea offers made after indictment must provide for a minimum of 18 years of parole ineligibility. Ibid. Defendant also asserted in a few sentences that the Guidelines are in "disharmony, if not in conflict" with the JLA because they interfere with defense counsel's ability to advocate for clients within the constraints of the JLA and impose a new restriction on when a 15-year plea offer can be made. Defendant requested that the PCR court order the Attorney General to remove the graduated plea provision from the Guidelines in cases where the defendant was not offered a pre-indictment plea; issue an order vacating defendant's conviction and sentence; and order the State to make a new determination as to whether to offer defendant a plea based solely on consideration of the victim's interests.

The PCR court rejected defendant's arguments that the graduated plea provision is fundamentally unfair and violates due process. The court noted that defendant was never entitled to a plea offer at any specific stage of his

6

prosecution. The PCR court further held that defendant was procedurally barred from challenging his sentence under Rule 3:22-4(a), finding that his arguments could have been raised at an earlier proceeding because he was aware of the Guidelines and the State's decision to withhold a pre-indictment offer at the time of his direct appeal.

Defendant appealed, arguing that his claims were not procedurally barred and claiming he could not have asserted them in a prior proceeding because the grounds for relief were based on facts outside the record, namely, the fact that he did not receive a pre-indictment plea offer or pre-indictment discovery.

The Appellate Division first considered whether defendant's claims were procedurally barred, as the trial court found. State v. Wildgoose, 479 N.J. Super. 331, 343-44 (App. Div. 2024). The Appellate Division noted that the procedural bar in Rule 3:22-4 governs unless one of three enumerated exceptions applies, including that the grounds for relief "could not reasonably have been raised in any prior proceeding." Id. at 344 (quoting R. 3:22-4(a)(1)). The appellate court agreed with the PCR court that defendant's constitutional claims could have been raised on direct appeal because "defendant was aware of the factual predicate for his current constitutional

7

claims well before he filed his direct appeal" and that defendant therefore failed to establish the exception in Rule 3:22-4(a)(1).  Id. at 345.

The court then considered the second exception, set forth in Rule 3:22-4(a)(2) -- "enforcement of the bar to preclude claims . . . would result in fundamental injustice" -- and held that this exception did apply to preclude application of the procedural bar in this case.  Id. at 345, 347.  The Appellate Division found that defendant had made "some showing" that the Guidelines' graduated plea provision "could have denied him 'fair proceedings leading to a just outcome' if the prosecutor had acted arbitrarily or capriciously in choosing to withhold a pre-indictment plea and that decision influenced the sentence reduction contemplated in the plea offer."  Id. at 347-48 (quoting State v. Nash, 212 N.J. 518, 546 (2013)).  The court noted that it could not "know whether the prosecutor in this case acted arbitrarily or capriciously . . . until the prosecutor explains the reasons for tendering the initial plea offer after defendant was indicted."  Id. at 347.

Having found that the fundamental injustice exception to the procedural bar applied, the Appellate Division then addressed defendant's "newly minted" constitutional claims "on their merits notwithstanding they could have been raised on direct appeal."  Id. at 347-48.  The Appellate Division noted that the graduated plea provision raises "inherent constitutional concerns under the

8

separation of powers doctrine" because prosecutors could adopt county policies discouraging pre-indictment plea offers in JLA cases. Id. at 353, 356. The appellate court stated that these local policies could lead to disparate sentencing practices. Id. at 356. Specifically, the Appellate Division found that "[a] violation of the separation of powers doctrine resulting in a less favorable plea offer than one defendant otherwise would have received, if proved, would constitute a fundamental injustice for purposes of the exception to the procedural bar." Id. at 347.

In order to "permit meaningful judicial review, thus ensuring the constitutional application of the JLA and Guidelines," the Appellate Division created a prophylactic rule: "[W]hen the initial JLA plea offer is made after indictment, . . . the prosecutor's statement of reasons should explain the rationale for the timing of the plea offer or else demonstrate that the graduated plea provision had no impact on the sentence reduction authorized by the plea offer." Id. at 357-58. The appellate court further held that unless the statement of reasons "establishes that the graduated plea provision had no impact on the sentence reduction, it should also include a representation on whether the timing of the plea offer was determined pursuant to a county policy, standard, or procedure." Id. at 358. The Appellate Division stated that

9

in designing this remedy, it "follow[ed] the . . . lead" of this Court in State v. A.T.C., 239 N.J. 450, 474-75 (2019).  Id. at 357.

The Appellate Division remanded defendant's case to the PCR court to develop the factual record by requiring the prosecutor to provide an explanation for his decision to withhold a pre-indictment plea offer.  Id. at 358.  The Appellate Division held that the PCR court "shall review" the prosecutor's explanation and "determine whether the prosecutor's discretion was exercised in an arbitrary and capricious manner as to warrant further judicial relief."  Id. at 358-59.

Defendant filed a motion for reconsideration with the Appellate Division on September 9, 2024, arguing that the Guidelines, the JLA, and the No Early Release Act (NERA) are in conflict and must be harmonized.  The Appellate Division denied the motion.

On October 18, 2024, defendant petitioned for certification, raising the following questions:

> 1.  Do the New Jersey Attorney General "Uniform Plea Negotiation Guidelines to Implement the Jessica Lunsford Act" [Attorney General Guidelines] impermissibly contravene the Statutory Language of the Jessica Lunsford Act?
>
> 2.  Do the Attorney General Guidelines impermissibly frustrate the legislative intent of the Lunsford Act, by forbidding prosecutors from offering the fifteen-year term of imprisonment intended to motivate an early

plea agreement in consideration of the victim's interests?

3.  Do the Attorney General Guidelines impermissibly contravene the mandatory minimum requirements of the No Early Release Act [NERA:  N.J.S.A. 2C:7-2]?[2]

This Court granted in full defendant's petition for certification, 260 N.J. 473 (2025), and the State filed a notice of cross-appeal to seek substantive relief from the Appellate Division's judgment.  We granted leave to appear as friend of the court to the Office of the Public Defender (OPD).

## II.

## A.

As noted, defendant's arguments have evolved over the course of this litigation.  On direct appeal, defendant asserted four claims related to his conviction and sentence.  None of those claims included defendant's later arguments regarding the Guidelines' alleged conflict with the JLA and NERA.

In his petition for certification, and before this Court, defendant argues that the Appellate Division failed to reconcile the conflicts between the Guidelines, JLA, and NERA.  He contends that the JLA allows prosecutors to

---

[2]  The third question appears to have been raised for the first time in a letter defendant submitted to the Appellate Division after he filed his initial brief. As noted above, defendant's initial arguments before the PCR court focused on the graduated plea provision of the Guidelines.

offer plea deals with a shorter term of imprisonment and, post-indictment, a shorter term of parole ineligibility than the Guidelines, which all prosecutors must follow.[3] He claims the Guidelines' restriction of prosecutorial discretion thwarts the JLA's purpose of allowing prosecutors to make lenient plea offers to induce pleas and spare child victims from testifying. Defendant claims that the post-indictment plea offer he received failed to consider the interests of the victim.

Defendant argues that NERA, along with N.J.S.A. 30:4-92 and -140, also conflicts with the JLA and the Guidelines, and that this conflict violates fundamental fairness. Defendant highlights how, regardless of what plea offers the Guidelines allow, NERA mandates that defendants serve 85% of their term of imprisonment. Defendant asserts that he received a misleading plea offer because, although his offer provided for only 18 years of parole ineligibility, NERA would have required him to serve over 21 years before release.

With regard to the procedural bar, defendant argues in his response to the State's cross-appeal that the Appellate Division properly applied the

---

[3] Defendant argues that, under the JLA, a prosecutor can offer a pre-indictment plea deal with a minimum of 15 years of imprisonment and 15 years of parole ineligibility. In contrast, he contends that the best pre-indictment plea the Guidelines allow the State to offer is 25 years of imprisonment and 15 years of parole ineligibility.

"fundamental injustice" exception of Rule 3:22-4(a) because his plea offer was misleading and offered an illegal sentence. Defendant asks this Court to vacate his conviction and order the Attorney General to modify the Guidelines by removing the graduated plea provision and adding provisions authorizing prosecutors to offer defendants charged with JLA offenses reductions in both prison sentences and parole ineligibility terms.

Amicus curiae, the OPD, urges this Court to strike down the graduated plea provision in the Guidelines. The OPD argues that the provision violates separation of powers because it permits the prosecutor to make a judicially unreviewable sentencing decision.[4] The OPD submits that the Appellate Division's decision does not adequately address the separation of powers issue because the statement of reasons it required is redundant with the statement the prosecutor is already required to give pursuant to A.T.C. The OPD further argues that this Court should strike the graduated plea provision because it undermines the JLA's legislative goals of promoting uniformity in sentencing and centering the interests of the victim in plea negotiations.

---

[4] The State asserts that because defendant did not raise this argument, this Court should not consider it. The State nevertheless contends that the Guidelines enable sufficient judicial review because the statement of reasons required by A.T.C. allows reviewing courts to determine whether a prosecutor's decision to depart from the 25-year mandatory minimum sentence is arbitrary and capricious.

13

B.

The State asserts that defendant waived his arguments about a perceived conflict between the JLA, the Guidelines, and NERA because defendant "rais[ed] them for the first time in his [PCR] Appellate Division reply brief." The State argues that defendant's claims are procedurally barred under Rule 3:22-4(a) because defendant "could have, but did not" raise them in a proceeding prior to his PCR petition. The State contends that none of Rule 3:22-4(a)'s exceptions apply. Regarding the substantive issues defendant raised, the State submits that no conflict exists between the JLA, the Guidelines, and NERA. The State argues that the PCR remedy defendant seeks is unavailable because defendant has no right to any particular plea offer on remand; there is no reason to believe defendant would accept a similar or higher-term offer to the one he was already given and rejected; and defendant in fact likely could not accept a new plea offer given his longstanding claim of innocence.

In its cross-appeal, the State requests that this Court reverse the Appellate Division's judgment to the extent it requires an additional explanation of the timing of a post-indictment plea offer. The State asks that this Court affirm defendant's conviction and sentence.

14

III.

We must first determine whether defendant's claims are barred pursuant to Rule 3:22-4(a). If they are, we need not consider defendant's arguments on the merits.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). Typically, we give deference to a "PCR court's factual findings based on its review of live witness testimony" and "will uphold . . . findings that are supported by sufficient credible evidence in the record." Nash, 212 N.J. at 540. A determination that a claim is procedurally barred is a legal conclusion, however. See, e.g., Moore v. Mitchell, 708 F.3d 760, 775 (6th Cir. 2013) ("Whether a petitioner's federal habeas claim is barred by procedural default is a question of law reviewed de novo."). "[W]e are not bound by and give no deference to the legal conclusions of the PCR court," and we "review de novo the . . . court's application of any legal rules to [its] factual findings." State v. Harris, 181 N.J. 391, 416 (2004); accord Nash, 212 N.J. at 540-41.

"Post-conviction relief is neither a substitute for direct appeal, nor an opportunity to relitigate cases already decided on the merits." Preciose, 129 N.J. at 459. As a result, petitioners are procedurally barred from asserting "[a]ny ground for relief not raised in the proceedings resulting in the

15

conviction . . . or in any appeal taken in any such proceedings" unless one of the following exceptions applies:

> 1. that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or
>
> 2. that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or
>
> 3. that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.
>
> [R. 3:22-4(a).]

The "procedural limitations on post-conviction review 'are imposed for a purpose,' and while not 'endors[ing] their rigid, mechanical application,' we anticipate that the procedural limitations and their exceptions will 'be conscientiously applied to the unique circumstances of each case.'" Preciose, 129 N.J. at 476 (alteration in original) (quoting State v. Mitchell, 126 N.J. 565, 589 (1992)); see also Mitchell, 126 N.J. at 584 (explaining that the purpose of Rule 3:22-4 is to help cases reach "finality" and that, "[w]ithout procedural rules requiring the consolidation of issues, litigation would continue indefinitely in a disconnected and piecemeal fashion").

This Court has generally "declined to read the exceptions to Rule 3:22-4 narrowly." Preciose, 129 N.J. at 476. However, the first exception is only

16

available to a petitioner if they show that "the factual predicate for [the] ground [for relief] could not have been discovered earlier through the exercise of reasonable diligence." R. 3:22-4(a); Nash, 212 N.J. at 546; Preciose, 129 N.J. at 476-77 ("Although we have construed the 'fundamental injustice' exception to apply only when a petitioner's guilt or innocence is involved, we have generously interpreted Rule 3:22-4(a) to permit the assertion of claims that could not reasonably have been raised in earlier proceedings." (citation omitted)). The third exception requires that petitioner show that "denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey," and that the new rule was "unavailable during the pendency of any prior proceedings" but was made retroactive to defendant's petition. R. 3:22-4(a).

Regarding the exception in Rule 3:22-4(a)(2), fundamental injustice, "there is no bright-line test to determine when" the exception applies. State v. Martini, 187 N.J. 469, 481 (2006). However, "we have stressed that it should be applied only in exceptional circumstances." Mitchell, 126 N.J. at 586-87 (emphasis added). When courts deem it appropriate to "relax procedural roadblocks" to PCR "to avoid fundamental injustice," they must "balanc[e] the competing interests of finality and fundamental fairness." State v. Szemple, 247 N.J. 82, 98 (2021). "PCR 'is not a device for investigating possible

17

claims, but a means for vindicating actual claims.'" State v. Marshall, 148 N.J. 89, 270 (1997) (quoting People v. Gonzalez, 800 P.2d 1159, 1206 (Cal. 1990)).

To determine whether a fundamental injustice has occurred, courts "look to whether the judicial system has provided the defendant with fair proceedings leading to a just outcome." Mitchell, 126 N.J. at 587; see also Nash, 212 N.J. at 546 ("Our courts will find fundamental injustice when the judicial system has denied a 'defendant with fair proceedings leading to a just outcome' or when 'inadvertent errors mistakenly impacted a determination of guilt or otherwise wrought a miscarriage of justice.'" (quoting Mitchell, 126 N.J. at 587)). Although the petitioner does "not have to prove that the issue of concern cost him the case," Mitchell, 126 N.J. at 587, "[t]o succeed on a fundamental-injustice claim, the petitioner must make 'some showing' that an error or violation 'played a role in the determination of guilt,'" Nash, 212 N.J. at 547 (quoting Mitchell, 126 N.J. at 587).

When a PCR claim is time barred or procedurally barred, our courts often still briefly assess the merits of the issues raised. See, e.g., State v. Milne, 178 N.J. 486, 495 (2004) (commenting briefly on the merits of the defendant's claim, although disposing of the appeal solely on procedural grounds, and noting that the trial court had done the same); see also Preciose,

18

129 N.J. at 477 (noting that, in instances where the Rule 3:22-4, -5, and -12 procedural bars are asserted to preclude PCR, "an abbreviated reference to underlying meritorious issues may be useful in demonstrating that reliance on the procedural bar has caused no injustice").

IV.

Applying those principles regarding the procedural bar in Rule 3:22-4(a) and the Rule's exceptions, we hold that defendant's claims are procedurally barred and that no exception applies.

Defendant directly appealed his conviction and sentence in 2018. In that appeal, he raised several arguments related to the indictment, jury instructions, prosecutorial misconduct, and the length of his sentence. None of his arguments related to the Guidelines, the JLA, or NERA. In his PCR appeal, defendant argued before the Appellate Division that the procedural bar exception in Rule 3:22-4(a)(1) applied because the facts upon which his current arguments are based were outside the record, so he could not reasonably have raised those arguments in a prior proceeding. As both the PCR court and the Appellate Division found, defendant and defense counsel were well aware of the existence of the Guidelines at the time of his direct appeal. Wildgoose, 479 N.J. Super. at 345. Defendant was also aware of the fact that the State did not offer him a plea prior to indictment or provide him

with pre-indictment discovery.  Consequently, we agree with the prior courts that the exception in Rule 3:22-4(a)(1) is not applicable.  See ibid.  Neither is the Rule 3:22-4(a)(3) exception, which exempts a PCR petition from the procedural bar when application of the bar would be contrary to a new rule of constitutional law.  No such new rule is implicated in this case.

The Appellate Division, however, found that defendant's claims fell within Rule 3:22-4(a)(2)'s exception because, according to the court, enforcement of the procedural bar could have deprived defendant of "fair proceedings leading to a just outcome" -- in other words, a fundamental injustice.  Id. at 347.  We disagree.

The Appellate Division relied on a series of "what if" scenarios in determining that a fundamental injustice possibly could occur if defendant's PCR claims were procedurally barred.  Ibid.  The exception in Rule 3:22-4(a)(2) states that the procedural bar will not apply if doing so "would result in fundamental injustice."  (emphasis added).  With no factual basis, the Appellate Division speculated that if the prosecutor acted in an arbitrary or capricious manner in declining to offer a pre-indictment plea, and if that decision -- which may or may not have been arbitrary or capricious -- influenced the plea offer made post-indictment, then defendant may have been deprived of fair proceedings leading to a just outcome.  Ibid.  The problem

20

with these suppositions is that defendant made no showing that any of this occurred or even possibly occurred.

The Appellate Division found that defendant had made "'some showing' that the Guidelines' graduated plea feature raises constitutional concerns." Id. at 348. Under our caselaw, however, in order to vault the procedural roadblock in Rule 3:22-4(a) and succeed on a showing of a fundamental injustice pursuant to Rule 3:22-4(a)(2), defendants must make some showing that "an error or violation 'played a role in the determination of guilt.'" Nash, 212 N.J. at 547 (emphasis added) (quoting Mitchell, 126 N.J. at 587). Defendant, who did not even accept the plea offer in this case, and who maintained his innocence throughout his proceedings, simply has not made that showing.[5]

Defendant never argued that his claims were exempt from the procedural bar under Rule 3:22-4(a)(2) and instead only argued exemption under Rule

_____

[5] Defendant is correct that the plea the State offered -- 25 years' imprisonment with 18 years of parole ineligibility -- did not comply with NERA, which would require just over 21 years of parole ineligibility. But again, defendant did not accept that plea, so he has suffered no harm or injustice from the plea offer. We ask the Attorney General and county prosecutors to ensure that pleas offered pursuant to the Guidelines comport with all relevant statutes and accurately state the applicable terms of imprisonment and parole ineligibility the defendant faces under the law. Similarly, the Attorney General should monitor and address whether any inter-county disparity exists in the following and implementation of the Guidelines. That issue is not before the Court here.

21

3:22-4(a)(1).  Defendant's arguments amount to general challenges to the Guidelines with no facts in the record showing that his case resulted in a fundamental injustice.  Additionally, defendant's "newly minted" arguments, as the Appellate Division labeled them, Wildgoose, 479 N.J. Super. at 347, regarding the alleged conflict between the Guidelines, the JLA, and NERA as they relate to plea offers, have no bearing on a determination of defendant's guilt because defendant rejected the plea he was offered and went to trial.  PCR is not a vehicle "for investigating possible claims, but a means for vindicating actual claims."  See Marshall, 148 N.J. at 270 (quoting Gonzalez, 800 P.2d at 1206).  Nothing in the record suggests that defendant was deprived of a fair proceeding or suffered an unjust outcome.

The Appellate Division appeared to base its determination of a potential fundamental injustice on multiple levels of speculation, as opposed to an actual showing by defendant that a fundamental injustice exempted his claims from the procedural bar in Rule 3:22-4(a).  See Wildgoose, 479 N.J. Super. at 347.  Such speculation cannot form the basis for a determination that the procedural bar in Rule 3:22-4(a), put in place to ensure finality in cases, should be relaxed.  As this Court has stressed, the fundamental injustice exception in Rule 3:22-4(a)(2) "should be applied only in exceptional circumstances."  Mitchell, 126 N.J. at 586-87.

22

The Appellate Division's determination that a fundamental injustice could have occurred here is also confounding given the fact that the State is not required to offer a defendant a plea at any time, at all. The Appellate Division acknowledged this in rejecting defendant's due process argument, stating that "'a defendant has no legal entitlement to compel a plea offer or a plea bargain' because 'the decision whether to engage in such bargaining rests with the prosecutor.'" Wildgoose, 479 N.J. Super. at 349 (quoting State v. Williams, 277 N.J. Super. 40, 46 (App. Div. 1994)). Defendant agrees, having noted in his appellate brief that he was "not arguing that the State must make a pre-indictment plea offer." If a defendant is not entitled to a plea offer and the State acts well within its discretion in deciding not to offer a plea, it is difficult to imagine a scenario, in the PCR setting, in which the State's decision not to offer a plea would result in a fundamental injustice for purposes of circumventing the procedural bar in Rule 3:22-4(a). No fundamental injustice occurred in this case.

V.

For the foregoing reasons, we find that defendant's PCR claims are procedurally barred pursuant to Rule 3:22-4(a). The Appellate Division erred in finding that the exception in Rule 3:22-4(a)(2) applied and creating a new

23

procedural rule in this procedurally barred appeal.  The Appellate Division's judgment is reversed.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion.  JUSTICE HOFFMAN did not participate.

24